**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ADHI PARASAKTHI CHARITABLE,          :
MEDICAL, EDUCATIONAL, AND            :
CULTURAL SOCIETY OF NORTH AMERICA,   :   CIVIL ACTION
                                     :
            Plaintiff,               :   No. 09-cv-1626
                                     :
      v.                             :
                                     :
TOWNSHIP OF WEST PIKELAND,           :
                                     :
            Defendant.               :


## MEMORANDUM AND ORDER

**Joyner, J.**                                    **March 16, 2010**

     This case is now before the Court on Defendant's Motion to
Enforce the Court's January 13, 2010 Memorandum and Order (Doc.
No. 39).  For the reasons set forth below, the Motion is GRANTED
in part and DENIED in part.

## Factual Background

     The facts of this case have already been set forth in this
Court's memorandum of January 13, 2010 (Doc. No. 35), and we
will, therefore, only provide a brief summary of the facts that
have transpired since our previous Order.  Following that Order,
Plaintiff provided Defendant with over 2600 pages of documents in
response to its document requests and served its "Second
Supplimental [sic] Answers" to Defendant's Interrogatories.
Believing that many of these responses were still deficient,

1

Defendant's counsel sent a letter to Plaintiff's counsel on January 21, 2010. The attorneys then discussed their disagreements on January 25, 2010, and Plaintiff's attorney sent a letter to Defendant's attorney on January 26, 2010, detailing Plaintiff's responses to Defendant's contentions, and attaching Plaintiff's "Fourth Supplimental [sic] Answers" to Defendant's Interrogatories.[1] Believing that these responses still are deficient, Defendant filed the present Motion.

Defendant points to five specific deficiencies in Plaintiff's responses to discovery to this point. First, Defendant asserts that Plaintiff has not adequately answered Interrogatory 4, requesting information about damages. Defendant urges this Court to prohibit Plaintiff from seeking monetary damages or presenting evidence of such damages at trial as a sanction for this failure. Second, Defendant objects to Plaintiff's responses to Interrogatory 7, arguing that Plaintiff continues to answer a question other than the one asked, and asking this Court to bar Plaintiff from arguing at trial that there were not other suitable plots of land in West Pikeland Township for the construction of a temple. Third, Defendant seeks an order compelling a more complete response to

---

[1] Defendant notes that it never received Plaintiff's Third Supplemental Answers to its interrogatories. As this Court has no record of any Third Supplemental Answers, we will assume that the captioning was simply a mistake, and that both Defendant and this Court are in possession of all of Plaintiff's answers to interrogatories.

Interrogatories 13 and 14, concerning the size and number of
deities in other temples, or, in the alternative, an order
dismissing Plaintiff's Complaint.  Fourth, Defendant takes issue
with the changing nature of Plaintiff's list of potential
witnesses, and seeks an order preventing Plaintiff from
continuing to add factual and expert witnesses at this stage of
the litigation.  Finally, Defendant asserts that Plaintiff has
not fully complied with document-production requests, and seeks
an order compelling Plaintiff to provide all responsive documents
and e-mails, and to provide several specific documents referenced
during depositions, but never produced for Defendant.

### Standard

Discovery in the federal courts is outlined by Federal Rule
of Civil Procedure 26.  Under this rule, "[p]arties may obtain
discovery regarding any non-privileged matter that is relevant to
any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The
rules then provide for several specific methods of discovery,
including by request for production of documents, Fed. R. Civ. P.
34, or by interrogatory.  Fed. R. Civ. P. 33.  In responding to
interrogatories, a party must either answer the interrogatory or
object with specificity to the request.  Fed. R. Civ. P. 33(b)
(3)-(4).  If the party does not properly object to the
interrogatory, the objection is waived unless the court decides
to excuse the failure.  Fed. R. Civ. P. 33(b)(4).  Importantly,

however, "[i]t is inappropriate for a party to decide for itself that an interrogatory is improper. It is its responsibility either to answer the interrogatory or to object." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2173 at 293-94 (2d ed. 1994) (footnote omitted).

A party may object to interrogatories for any of the reasons included in Rule 26(b)(1)(C), which include that the discovery is cumulative, duplicative, or the benefit of the discovery outweighs the burden of obtaining the information. "As a general rule a party in answering interrogatories must furnish information that is available to it and that can be given without undue labor and expense. But a party cannot ordinarily be forced to prepare its opponent's case." Id. § 2174 at 302-03 (footnotes omitted) (citing Ballard v. Allegheny Airlines, Inc., 54 F.R.D. 67 (E.D. Pa. 1972)). When an objection is made on the basis that the information is unavailable, however, the burden is on the party seeking to avoid answering the request to demonstrate that the information is not readily available or would be overburdensome to discover. Id. at 310.

In responding to a request for production of documents, a party must "state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(a)(2)(B). As with

interrogatories, an "incomplete or evasive" response to document-production requests is considered a failure to disclose. Fed. R. Civ. P. 37(a)(4). Importantly, however, "[a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e).

When discovery requests are not answered or are incompletely answered, the requesting party may return to court to seek an order compelling responses. Fed. R. Civ. P. 37(a). If this order is not obeyed, the party may then seek sanctions pursuant to Federal Rule of Civil Procedure 37(b). It is within the discretion of the district court to determine whether sanctions are appropriate in an individual case. Bowers v. NCAA, 475 F.3d 524, 528 (3d Cir. 2007). When making such a determination, the court should consider "1) the extent of the party's personal responsibility; 2) a history of dilatoriness; 3) whether the attorney's or party's conduct was willful or in bad faith; 4) meritoriousness of the claim (i.e., whether the allegations in the pleadings support recovery); 5) prejudice to the other party; and 6) appropriateness of alternative sanctions." Ali v. Sims, 788 F.2d 954, 957 (3d Cir. 1986). Further, if a motion for sanctions is granted, the court must award attorney's fees and reasonable expenses caused by the failure to comply with the

court's discovery order, unless "substantial justification" is
shown for the failure.  Fed. R. Civ. P. 37(b)(2)(C).

**Discussion**

**Interrogatory 4**

   Defendant's Interrogatory 4 asks Plaintiff to "[s]et forth
the basis for the computation of damages to which Plaintiff
believes that it is entitled by virtue of the instant matter."
Following this Court's prior Order compelling a more complete set
of responses to Defendant's interrogatories, Plaintiff submitted
its "Second Supplimental [sic] Answers" to Defendant's
interrogatories.  At that point, Plaintiff answered that it was
entitled to damages for "the daily loss of the right to exercise
its religion in adequate facilities and the daily suffering of
religious discrimination."  Plaintiff further noted that it was
allowed to collect damages for these harms under both RLUIPA and
42 U.S.C. § 1988, and that, although an exact figure could not be
provided, Defendant's own practice of fining individuals $500 per
day for an uncorrected zoning violation provided a rough baseline
for the damages suffered by Plaintiff.  Following this answer,
Defendant sent a letter to Plaintiff explaining that it did not
believe that Plaintiff had answered the question asked, and that
Defendant was attempting to determine the amount of damages that
Plaintiff was seeking or a method for computing those damages.
Plaintiff responded with a letter, in which it stated that it was

not seeking actual damages, but instead, was seeking solely
nominal and punitive damages.  When Plaintiff submitted its
"Fourth Supplimental [sic] Answers" to Defendant's
interrogatories, its answer to Interrogatory 4 was unchanged.
Defendant seeks an order from this Court preventing Plaintiff
from seeking monetary damages due to Plaintiff's vague response
and due to the fact that Plaintiff appears to be seeking nominal
and punitive damages without seeking actual damages.

     At this time an order preventing Plaintiff from seeking
damages would be inappropriate.  Plaintiff has answered the
question asked and has explicitly stated that it is not seeking
actual damages.  Whether nominal or punitive damages are
available without actual damages is not appropriately decided on
a motion to compel answers to interrogatories.  Plaintiff has
stated what its harms are and has stated that it will seek
injunctive relief, punitive damages, and nominal damages.  Unlike
actual damages, no precise calculation is involved in any of
these.  Plaintiff, therefore, has fully answered Defendant's
Interrogatory 4.  We take no position on whether Plaintiff is
entitled to the damages that it seeks, as this is a subject more
appropriately addressed in a motion for summary judgment.
Plaintiff has not violated this Court's previous Order, and no
sanction will be imposed on it in relation to Interrogatory 4.

**Interrogatory 7**

Defendant's Interrogatory 7 requests that Plaintiff "[s]tate with specificity all grounds that you contend support the claim that there is no available land within West Pikeland Township that is suitable for Plaintiff to build or use for religious purposes, as alleged in paragraph 34 of the Complaint." In this Court's Order of January 13, we noted that although Plaintiff had explained why the chosen plot of land was acceptable, it had not explained why no other plot of land was adequate. Following this, in Plaintiff's "Second Supplimental [sic] Answers," it stated that all of the other properties in West Pikeland Township were rejected by the Guru, and that no reasons were given or records kept during this process; once the Guru rejected all other properties, he came to the property in West Pikeland Township and blessed it, making it holy, and making this the only plot of land on which Plaintiff could build its temple. Defendant again objected to this answer for failing to address the reasons for rejecting all other land. In Plaintiff's "Fourth Supplimental [sic] Answers" it attempted to clarify the process used to select the land. First, a property list was compiled listing all potentially suitable lands. Then the Guru instructed Mr. Chinnadurai to look at the land on the property list and explained to Mr. Chinnadurai how to determine what plot of land was suitable for the building of the temple. Once Mr.

Chinnadurai selected the appropriate plot, the Guru came to bless the land.  Defendant contends that these answers are insufficient and seeks an order barring Plaintiff from arguing that there was no suitable land available for the temple other than the plot that was eventually purchased in West Pikeland Township.

Although Plaintiff has answered this interrogatory, it has done so somewhat contradictorily, and its answers remain deficient in two ways:  Plaintiff's answers are not clear on whether the other plots of land were rejected or simply not chosen; and Plaintiff is not clear on the reasons, if any, that the other land is considered unacceptable.  Starting with the first of these inquiries, in its Second and Fourth Answers to Defendant's interrogatories, Plaintiff seems to indicate both that the Guru selected the land that was ultimately chosen and that the Guru rejected the other land as inappropriate for a temple.  Plaintiff's Fourth Answer continues, however, to describe the role played by Mr. Chinnadurai in selecting the land, and, at this point, it appears that Plaintiff claims that the other land was not rejected as inappropriate, but simply not chosen as the most appropriate.  In this scenario, it was not that the other land was inherently inappropriate for a temple, but was only unavailable at this point because it was not yet blessed by the Guru.  There is an important distinction between these two versions:  in one version the other land on the initial

property list was actively rejected and remains inappropriate; in the other, the land was rejected only in the sense that it was not ultimately chosen, and could remain a viable option should the present plot of land not be available for construction.

Plaintiff compares its process for choosing a plot of land to the process used to select a spouse for an arranged marriage. This comparison is useful for explaining the continued deficiency in Plaintiff's answer. As Plaintiff notes, sometimes there are explicit reasons that a potential spouse is unacceptable, such as astrological signs that counsel against a union. To the extent that it has explicit reasons such as this for rejecting certain plots of land, Plaintiff must provide these reasons in order to fully answer Defendant's interrogatory. Further, it is unclear whether the fact that a plot of land was not initially chosen makes it permanently inappropriate. Returning to the arranged-marriage comparison, if the chosen bride died before the marriage, would the other potential brides remain unacceptable options, or would at least some of them still be available for consideration? In order to fully answer Interrogatory 7, Plaintiff must clarify which properties were rejected as unacceptable and which were simply not chosen as the most acceptable, and Plaintiff must also state whether those not chosen could still remain as viable options.

Further, to the extent that reasons exist, Plaintiff must

inform Defendant of why these other properties were unacceptable or not chosen. This Court, and presumably Defendant, understands that the other potential sites for the temple could not provide an immediate replacement because they have not been blessed. This, however, does not excuse Plaintiff from informing Defendant if there was any known reason for rejecting the land before the Guru made his blessing, or if there is any reason, apart from it not yet having been blessed, that now prevents other land from serving as a temple site. At this point, it is clear that a certain number of plots were chosen based on their size and location. It is also clear that what makes the final plot appropriate is intangible and relies on the judgment and discretion of the Guru. What is unclear is if there are any reasons that the other land was inappropriate other than that the Guru did not ultimately choose them. In further answering, Plaintiff should focus on the reasons, if any, that the other land was rejected, either by the ACMEC board, the Guru, Mr. Chinnadurai, or anyone else. We recognize that this answer may be short and may be that there is no reason that the land was unacceptable other than that it was not chosen by the Guru. In order to fully answer Interrogatory 7, however, Plaintiff must provide its reasons, whatever they may be, for finding that no other land was appropriate.

In considering what sanction is appropriate for Plaintiff's

continued failure to answer the interrogatory, we must consider the factors listed above. Overall, these factors do not support an imposition of severe sanctions on this issue. First, it does not appear that the party is personally responsible for the failure to answer. Given the length of the answers provided, it appears that Plaintiff has attempted to answer the question, and there is no indication that Plaintiff is attempting to withhold information from its attorneys to prevent them from answering. In addition, neither Plaintiff nor its attorneys' conduct shows bad faith. Plaintiff has filed three answers to interrogatories and its attorneys have met with Defense counsel to discuss the interrogatories. Although Plaintiff still has not provided an appropriate answer, it does not appear to be for lack of effort or for bad faith. Also, so long as Plaintiff does provide a full answer to Defendant, we cannot see any prejudice that has resulted from Plaintiff's failure to answer to this point. Finally, although we take no position on the ultimate merits of Plaintiff's claims, the pleadings to this point certainly could support recovery if the facts alleged are proved, and this also weighs against preventing Plaintiff from bringing its claims.

The only factor that points in favor of granting strong sanctions is that there may be a history of dilatoriness at this point. Given the number of times Plaintiff and Defendant have gone back and forth on this issue, it is beginning to become

untenable to assume that the parties are merely talking past one another without understanding the other side's position. Defendant's question is not especially complex, nor is it confusingly worded.  We have no evidence, however, that Plaintiff has any motive to delay its own proceeding, and are, therefore, reluctant to impose strong sanctions based on this factor alone. Further, we believe that an alternative to preventing Plaintiff from contesting this point at trial can be crafted.  We will allow Plaintiff one final chance to fully answer the interrogatory, and will require Plaintiff to pay the costs associated with the filing of Defendant's Motion, as required by Federal Rule of Civil Procedure 37(b)(2)(C), as we see no "substantial justification" for Plaintiff's failure.  In addition, we warn Plaintiff that should it still fail to fully answer Defendant's Interrogatory 7, even after this Court has extensively explained the reasons that Plaintiff's prior answers have been deficient, we will issue an order preventing Plaintiff from contesting at trial that other suitable land was available for constructing a temple in West Pikeland Township.

**Interrogatories 13 and 14**

Interrogatories 13 and 14 inquire into the "names, locations, and sizes" of the temples owned, operated, and utilized by Plaintiff, its congregants, and adherents to ACMEC, "including the names, sizes and numbers of Deities situated

therein."  In response to these interrogatories, Plaintiff has

supplied a list of 11 temples, their locations, and the number of

deities situated within.  Plaintiff also states, however, that it

does not know the size of any of these temples or deities.

Defendant seeks either for this Court to order a complete

response or to dismiss the Complaint.

We agree with Defendant that a more complete answer is

required for these interrogatories.  First, the subject matter of

the inquiry is certainly appropriate as it is relevant to a

party's claim or defense, and Federal Rule of Civil Procedure

33(a)(2) allows interrogatories to inquire as broad as the scope

of Rule 26.  In the present circumstances, Defendant has denied

Plaintiff permission to build the desired temple because of its

zoning ordinance.  It is certainly relevant to Defendant's

defense if it can demonstrate that a temple with the size and

number of deities desired by Plaintiff is not, in fact, necessary

for Plaintiff to have an adequate place of worship, or if it can

demonstrate that Plaintiff can build an adequate place of worship

without needing to resort to a variance from Defendant's zoning

ordinance.

In responding to interrogatories, "[e]ach interrogatory

must, to the extent it is not objected to, be answered separately

and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).

Plaintiff states that it "does not know" the answer to the

question of the sizes of these temples or deities. This is neither an acceptable answer nor an appropriate objection to the interrogatory. Plaintiff has a duty to obtain the information available to it. Plaintiff may object on the grounds that obtaining the information would be overly burdensome, expensive, or duplicative, but Plaintiff cannot simply answer that it does not know and avoid any further duty to answer. In the present case, Plaintiff has not properly objected to the interrogatory, and, therefore, any objection at this point has been waived. Although Plaintiff did object in its first set of answers to Defendant's interrogatories, this objection was not raised with sufficient specificity to make it effective, as discussed in this Court's Memorandum and Order of January 13, 2010. Any objection, therefore, has been waived.

Even if any objection had not been waived, however, it is not clear that this request is, in fact, overly burdensome or costly. Plaintiff contends that it would be unthinkable for this Court to require its members to travel to these temples with a tape measure in hand in order to obtain answers to Defendant's interrogatories. This, however, is certainly not required to obtain the requested information. Plaintiff could likely obtain the information simply by making a phone call to these temples, and, if the individual temples have not kept records, presumably the respective town or city in which the temple is located has

some record-keeping office that has a deed or building permit or some other document that contains information on the size of the temples.  Regardless of where or how Plaintiff obtains this information, as far as this Court is concerned, Defendant has asked an appropriate interrogatory and Plaintiff has neither answered nor appropriately objected, and, therefore, an additional response is necessary.

As sanctions are again appropriate on this issue, we return to the list of factors above.  Here, it is unclear whether the fault for the failure to answer lies with the party itself or with its attorneys.  It is the responsibility of the attorney to advise his client of the extent to which the client must go to answer an interrogatory, but the information itself is in the control of the client.  Further, on this issue in particular, Plaintiff has appeared dilatory.  It was not until its "Fourth Supplimental [sic] Answers" to Defendant's interrogatories that Plaintiff provided even the names and addresses of the other temples utilized by Plaintiff's congregants.  Until that point, Plaintiff appeared simply to ignore the fact that Interrogatories 13 and 14 asked separate questions and that each asked for information concerning a variety of relationships with various temples.  Further, although Plaintiff does not appear to have acted in bad faith, it certainly has not acted in good faith. There was no attempt to answer the majority of the interrogatory

in Plaintiff's first response, and the second response does not provide much more information. It is only on the third response that Plaintiff actually provides some of the information requested, but still simply refuses to answer other portions of the interrogatory. Finally, Defendant will certainly be prejudiced if it does not obtain this information, as it is directly relevant to both Plaintiff's claim and Defendant's defense.

Two factors, however, weigh against imposing harsh sanctions at this stage. First, as noted above, it does appear that Plaintiff's claim might have some merit if it can support its allegations. Further, we do believe that an alternative sanction to dismissal of Plaintiff's case can be adequate at this point. We will, therefore, order Plaintiff to provide all of the information requested by Defendant's interrogatory, including the size of the temples and any deities therein. Should Plaintiff fail to comply with this Order, we will consider further sanctions, including the dismissal of Plaintiff's Complaint.

**Interrogatories 15, 20, and 25**

Several of Defendant's interrogatories inquire into potential witnesses for Plaintiff. Interrogatory 15 requests the identity of any individual contacted as a potential fact witness, Interrogatory 20 requests the identity of any experts expected to testify at trial, and Interrogatory 25 requests the identity of

all those who Plaintiff intends to call as witnesses at trial. In its first response, Plaintiff provided a list of 20 witnesses for Interrogatory 15, stated that the experts would be the same as had testified before the previous Township hearing in response to Interrogatory 20, and did not answer Interrogatory 25. Following this, Plaintiff filed its "Supplimental [sic] Answers" to Defendant's Interrogatories. In response to Interrogatory 15, Plaintiff removed its board members from the list of witnesses contacted. In its "Second Supplimental [sic] Answers" Plaintiff provided a list of 27 individuals who had been contacted as potential fact witnesses, removing 1 from the initial list, and adding back the board members as well as an additional 8 witnesses. In response to Interrogatory 20, Plaintiff listed 7 expert witnesses, and in response to Interrogatory 25, Plaintiff listed the same 27 witnesses as were listed in response to Interrogatory 15. Plaintiff's "Fourth Supplimental [sic] Answers" list the same potential witnesses as provided in its "Second Supplimental [sic] Answers" in response to all three interrogatories.

Defendant objects to the addition of new potential witnesses in the "Second" and "Fourth" responses. Defendant argues that the Scheduling Order in this case required the disclosure of all potential witnesses by December 26, 2009, and that this Court's Order of January 13, 2010, only allowed Plaintiff to correct its

deficient responses, and not to change its answers that were not deficient. Defendant, therefore, requests that this Court issue an order preventing the witnesses not identified before December 26, 2009, from testifying.

We do not see a need to sanction Plaintiff for its responses to Interrogatories 15, 20, and 25. Regardless of this Court's initial scheduling order, it is clear that discovery has been ongoing in this case. In our Order of January 13, 2010, we implicitly modified the Scheduling Order by extending the discovery period. Although the Order did not explicitly address all of the deadlines set by the Scheduling Order, the intent was clearly to allow discovery to continue for an additional period so that Defendant could conduct full discovery. Further, as Defendant itself notes, many of the "new" witnesses had already been named. Indeed, Defendant had already sought depositions of Plaintiff's board, and Defendant, therefore, has not been overly prejudiced by their reintroduction at this somewhat late phase of the litigation.

In our previous Order, we granted Defendant a thirty-day period to finish discovery once Plaintiff responded, as we believed that this was a sufficient amount of time to allow Defendant to conduct depositions of the potential witnesses provided by Plaintiff. Given, however, that it appears that the number of "new" witnesses is on the large side, should Defendant

19

require a short extension of the thirty-day period, this Court

will consider a request for such an extension.  Plaintiff,

therefore, will not be prevented from using the testimony of the

witnesses supplied in response to Interrogatories 15, 20, and 25,

but will not be permitted to amend these answers again.

**Document Production**

At the time that it served its interrogatories, Defendant

also served a series of requests for documents pursuant to

Federal Rule of Civil Procedure 34.  Included was a request for

> [a]ll statements, communications and correspondence
> (including written letters, facsimiles, text messages,
> and email electronic mail messages) between or among
> Plaintiff, Plaintiff's Executive Board, Plaintiff's
> engineers . . . , Plaintiff's architects . . . , the
> individual identified by Plaintiff's representatives as
> the Guru, and any other consultant engaged by Plaintiff
> concerning the Subject Property and/or any proposed
> development thereon.

Although Plaintiff initially did not provide any documents in

response to these requests due to the fact that Plaintiff claimed

to have already provided these documents to Defendant before the

Township Zoning Board hearing, Plaintiff provided over 2600 pages

of documents to Defendant following this Court's Order of January

13, 2010.  Defendant, however, believes that these document

disclosures are incomplete.  Specifically, Defendant alleges that

no documents have been produced that address the purchase or

ownership of the current property, that the three e-mails

provided simply cannot be all of the e-mails exchanged between

Plaintiff's Executive Board, and that Plaintiff has not provided specific documents testified about during deposition by Plaintiff's witnesses.

This Court finds itself in a difficult position on this issue. Plaintiff has provided 2600 pages of documents in response to Defendant's document requests, but Defendant asserts that there must be more documents that have not been produced. In response to these assertions, however, Plaintiff does not deny that more documents exist or contest that they are discoverable by Defendant; rather, Plaintiff is silent on the issue. Indeed, in Plaintiff's Response to Defendant's Motion to Enforce this Court's prior Discovery Order, it lists the issues raised by Defendant, and does not include the document requests. Given this silence, we remain uncertain whether Plaintiff actually possesses any additional documents.

In reference to the existence of documents discussing purchase and ownership of the property, the information is entirely within Plaintiff's control, and Plaintiff cannot avoid the request by simply ignoring the issue. As Defendant seems to doubt Plaintiff's willingness to turn over all responsive documents, we believe that it is most efficient at this stage to order Plaintiff to allow Defendant to inspect "any designated documents" within Plaintiff's control, as provided by Federal Rule of Civil Procedure 34(b). In doing so, it is our hope that

Defendant can at least receive assurance that it possesses all relevant documents, and will allow for complete discovery in accordance with the provisions of Rule 34.

The other two issues that Defendant raises are more complicated. With respect to the e-mails, neither this Court nor Defendant knows whether more e-mails do, in fact, exist. Further, Plaintiff states that if any responsive e-mails did exist, they have since been deleted in the ordinary course of business, and therefore cannot be produced. As noted above, this Court cannot impose sanctions for the loss of electronic information if the information was lost in good faith and the standard course of business. Because of this fact, it is unclear whether sanctions are an option on this issue. Defendant, however, asserts that the mere deletion of an e-mail does not make it lost forever, and that additional responsive documents could be retrieved with an e-discovery specialist. Given that Plaintiff has not denied that additional responsive e-mails may have existed at one point, we think it appropriate to order Plaintiff, pursuant to Federal Rule of Civil Procedure 34(b), to allow Defendant to have its own e-discovery expert inspect Plaintiff's computers to determine if any responsive information is still contained on the hard drives or servers of Plaintiff's computers. This will allow Defendant to conduct discovery on information to which it is entitled without burdening Plaintiff

with the expense of hiring a discovery expert.

Finally, Defendant requests that Plaintiff turn over the documents produced by Plaintiff's witnesses. This Court again, however, does not know if these documents are in Plaintiff's possession. Defendant conducted depositions on several of Plaintiff's witnesses, and these witnesses testified about the existence of certain documents within their possession and informed Defendant that these documents would be turned over to Plaintiff. Although this Court does know that Defendant has not yet received these documents, we do not know whether Plaintiff has received them from its witnesses. As this Court cannot order a nonparty to produce documents, Fed. R. Civ. P. 34(c), and we are unsure whether Plaintiff has these documents, we are not able to appropriately compel the production of these documents. We will, therefore, order Plaintiff to turn over these documents if in its possession, and if Plaintiff does not yet have these documents in its possession, it is hereby ordered to undertake reasonable efforts to obtain the documents from its witnesses. Should Plaintiff be unable to obtain these documents specifically referenced by its witnesses during depositions, it shall inform both Defendant and this Court that it was unable to do so and shall set forth the efforts it used to obtain them.

## Conclusion

Defendant's Motion is granted in part and denied in part.

Although we will not prevent Plaintiff from seeking any damages at trial, we will enter an order preventing Plaintiff from introducing evidence as to any actual damages that it has suffered, as Plaintiff has explicitly stated in response to Interrogatory 4 that it will not be seeking actual damages. Further, Plaintiff is ordered to provide a complete answer to Interrogatory 7, as more fully detailed above, although we will not issue any further sanction on Plaintiff for its failure on this issue at this time. In response to Interrogatories 13 and 14, Plaintiff is ordered to provide the sizes requested by Defendant, or this Court will consider further sanctions. In regard to Defendant's last request involving its interrogatories, we believe that Plaintiff has fully answered Interrogatories 15, 20, and 25, and will not issue any further orders relating to these interrogatories, other than to establish that their most recent answer shall be their final answer to these questions. Finally, Plaintiff is ordered to comply with Defendant's requests for document production as outlined above. Given Plaintiff's various failures to comply with this Court's previous order, and given that this Court is unable to find any substantial justification for these failures, Defendant is also entitled to any reasonable expenses associated with the filing of the present Motion, including attorney's fees.