**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ADHI PARASAKTHI CHARITABLE,            :
MEDICAL, EDUCATIONAL, AND              :
CULTURAL SOCIETY OF NORTH AMERICA,     :    CIVIL ACTION
                                       :
            Plaintiff,                 :    No. 09-cv-1626
                                       :
      v.                               :
                                       :
TOWNSHIP OF WEST PIKELAND,             :
                                       :
            Defendant.                 :


## MEMORANDUM AND ORDER

**Joyner, J.**                                      **June 23, 2010**

This case is before the Court on Defendant's Motion for
Summary Judgment (Doc. No. 70) and Plaintiff's Cross-Motion for
Summary Judgment (Doc. No. 74).  For the reasons set forth in the
attached Memorandum, these Motions will be GRANTED in part and
DENIED in part.

## Factual Background

Plaintiff in this case is the Adhi Parasakthi Charitable,
Medical, Educational, and Cultural Society of North America
("ACMEC"), which is an organization of Hindus who live in the
United States and follow the teachings of its Guru, Shri Bangaru
Adigalar, who lives in Melamvurathum, India.  Plaintiff's
members, however, have several beliefs that differ from those of
many Hindus.  One important difference is that Plaintiff's

congregants believe that an individual is capable of worshiping a deity directly, and all congregants are, therefore, able to pray in all parts of a temple and before all of the stone deities contained within each temple. In the majority of the temples in India, however, these congregants would not be permitted entry to the portions of the temple that contain many of the deities. On January 20, 2000, Plaintiff bought a plot of land at 1456 Conestoga Road, Chester Springs, Pennsylvania, which is located within the Township of West Pikeland. This case centers around Plaintiff's desire to construct a temple on this plot of land and use it for religious purposes.

Beginning in 1998, Muthu Chinnadurai, a member of ACMEC, was tasked with finding an appropriate place to build a Sakthi Peetem[1]—a type of Hindu temple—in the United States. In March of 1999, Mr. Chinnadurai presented the Guru with a list of fifty properties as potential sites for the temple. The Guru did not approve any of these locations, and instead gave further instructions to Mr. Chinnadurai on how to select a property. Upon his return to the United States, Mr. Chinnadurai toured the property at 1456 Conestoga Road and became convinced that this was the property that he had been instructed to select. He gave

---

[1]Plaintiff refers to this structure as a Sakthi Peetem, Sakthi Peedam, Sakthi Peetam, and Sathki Peetem throughout its briefing in this case. As it appears to this Court that these are all referring to the same structure, and Plaintiff refers to it as a Sakthi Peetem most often, we will adopt that spelling for the purposes of this Memorandum.

a copy of a map of the property to Ravi Shankar, a fellow member of ACMEC, who took the map to the Guru in India. The Guru informed Mr. Shankar to purchase the property immediately and marked on the map where the temple should be built. Following this, in 2000, the Guru came to the United States, blessed the property, and laid the cornerstone for the building of a temple.

Since the purchase of the property, members of ACMEC have used the existing structure as a meeting house for weekly prayer and meditation. Between five and eight families have used the property once or twice per month, and, depending on the weekend, Mr. Chinnadurai estimates that between four and fifteen or twenty individuals will gather to worship each weekend. In addition, when the Guru came to bless the property, Plaintiff held a festival attended by approximately 600 people, and that involved the construction of temporary tents on the property. Further, Plaintiff anticipated hosting an annual festival on the property, which would consist of approximately fifty to sixty families coming to the property for prayer.

In order to understand the present suit, it is necessary to examine the history of the specific plot of land at issue in this case. Prior to Plaintiff's purchase of the plot of land at 1456 Conestoga Road, the land was owned by Stewart and Shelly Wilson, and was part of a much larger single plot of land. In 1998, the Wilsons submitted a subdivision plan to divide this property into

four separate lots.  When the Township approved the subdivision plan, it was done so with limitations, by way of restrictive covenants, on any future development of the property.  As recorded on the subdivision plan filed in the Office of the Recorder of Deeds of Chester County, Tract 1 "is a non-building lot and any future construction of a residence shall require approval of an on-site septic system by the Chester County Health Department."  (Ex. E Def.'s Mot. Summ. J.)  In addition, on the subdivision map itself, a portion of Tract 1 is cross-hatched and states "ANY RESIDENTIAL USE OF THIS PARCEL SHALL BE LIMITED TO ONE (1) HOME SITE IN THIS CROSS-HATCHED AREA."  (Id.)  The "remaining area" that was not given a tract number on the subdivision plan is also subject to the restriction that "NO DEVELOPMENT SHALL BE PERMITTED BEYOND THIS CROSS-HATCHED BOUNDARY."  (Id.)  This subdivision plan was referenced on both the deed from Stewart and Shelly Wilson to Adhimoolam Sriram, who was acting as a strawman for Plaintiff, and the deed from Mr. Sriram to Plaintiff.

When negotiating the purchase of the land, Mr. Sriram attempted to condition the purchase on obtaining permission to construct a house of worship on the premises.  This condition, however, was rejected, and both Tract 1 and the "remaining area" were purchased without any contingency relating to the construction of a building.  On January 20, 2000, Mr. Sriram paid

4

$445,750.00 for the two lots, and subsequently deeded these to Plaintiff on November 21, 2001.

Since purchasing the property, Plaintiff has filed several applications with Defendant's Zoning Board. The first of these was in 2000, and involved a request to build a 33,000 square-foot temple. This request, however, was withdrawn before the Board held a hearing on it. In September of 2001, Plaintiff submitted a second application to the Zoning Board. This request for a special exception was to build a 5,000 square-foot structure to use "as a church or similar place of worship." Hearings were held on September 25, 2001, and January 22, 2002. Testimony in these hearings made clear that the 5,000 square feet proposed for this project included not only the main temple, but also any auxiliary living areas, bathrooms, facilities, and any other development. On April 11, 2002, the Board granted Plaintiff's special exception, contingent upon several conditions: Plaintiff was required to construct an all-weather parking area, provide a traffic-management and parking plan prior to its annual festival, modify the driveway to allow two vehicles to pass each other, verify that the existing sanitary sewage system was adequate, ensure that the use and conversion of the existing residential structure complied with all building codes, submit a landscaping plan to mitigate the visual impact of the proposed use, obtain a highway occupancy permit if required, any comply with reasonable

requirements imposed by the Chester County Department of Health during Plaintiff's annual festival. In addition, Plaintiff was forbidden from using any new outdoor lighting without prior approval, using any signs that violated the Township's sign regulations, or increasing the scope of the activities described to the Board or attempting to enlarge any of the facilities without approval of the Board. This decision was not appealed, and Plaintiff "fixed the house" and expanded the driveway in 2005.

Plaintiff returned to the Zoning Board on July 10, 2008. This application was for conditional-use approval for the construction of a 26,370 square-foot temple and a 9,100 square-foot auxiliary building. The purpose of this expansion was to allow for the housing of several stone deities, and the larger size was dictated by the required placement of the deities and the specific distances that they needed to be from one another. Importantly, the development plan that Plaintiff submitted to the Zoning Board included construction outside of the cross-hatched lines marked on the subdivision plan. Although Plaintiff's final proposal did not appear to request permission for either of the structures to extend beyond the cross-hatched boundary, the septic system would have still been outside of this area. The Zoning Board held eight public hearings on this plan between August 19, 2008, and January 15, 2009. These hearings included

testimony from Plaintiff's representatives as well as engineers, various expert witnesses, and comments from residential neighbors.  The Zoning Board concluded that the proposal included "development" outside of the cross-hatched markings on the subdivision plan in violation of the restrictive covenant on the property, and expressed concern over the environmental impact that the construction would have on the property.  Recognizing, however, "the right of the Applicant to worship and its desire to construct a Hindu temple at the site," (Ex. M Def.'s Mot. Summ. J. 32), the Zoning Board approved the conditional use, subject to a series of conditions.  These conditions, however, included that Plaintiff submit a further plan to the Zoning Board that limited the development to a single structure not exceeding 5,000 square feet, constrained all development within the cross-hatched areas on the subdivision plan, and had a maximum occupancy of 200 people.  In effect, therefore, the Board denied Plaintiff's application.  Plaintiff neither submitted a revised plan nor appealed the Zoning Board's decision.

Plaintiff filed its Complaint in this Court on April 17, 2009.  Although Plaintiff's Complaint initially contained seven counts, Counts VI and VII were voluntarily dismissed on March 25, 2010.  Count I charges Defendant with violating Plaintiff's First Amendment rights to speech and assembly.  Plaintiff argues that its proposed construction of a temple and use of the property

constitute protected speech and that Defendant's Zoning Ordinance is a content-based restriction on this speech, which seeks to regulate religiously based speech more stringently than nonreligious speech. Further, Plaintiff alleges that any requirement that it receive approval before using the property for religious purposes provides Defendant with unfettered discretion and constitutes a prior restraint on Plaintiff's speech. In Count II, Plaintiff alleges a violation of its First Amendment Free Exercise rights. Again, Plaintiff's allegations focus on Defendant's Zoning Ordinance and argue that this places a substantial burden on Plaintiff's ability to exercise its religion. Count III charges Defendant with violating the Fourteenth Amendment's Equal Protection and Due Process Clauses. Plaintiff argues that Defendant's Zoning Ordinance discriminates against religious land uses, and thereby violates the Equal Protection Clause. Further, Plaintiff states that terms of the Zoning Ordinance are overly vague and arbitrarily enforced, thereby violating its Due Process rights. Count IV alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(a), and asserts that Defendant's Zoning Ordinance imposes a substantial burden on the exercise of religion. Finally, in Count V, Plaintiff asserts violations of RLUIPA, 42 U.S.C. § 2000cc(b). This Count also focuses on Defendant's Zoning Ordinance and asserts that it

discriminates against religious uses and thereby violates the equal terms, nondiscrimination, and unreasonable limitation or total exclusion provisions of this statute.

## Standard

When a party files for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In order to survive a motion for summary judgment, however, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings. Id. at 324. Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact. Matsushita, 475 U.S. at 586. Further, when the non-moving party is the plaintiff, he must "make a showing sufficient to establish the existence of [every] element essential to [his] case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Finally, in making a decision as to whether there is a "genuine" issue of fact, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## Discussion

**Free Speech and Assembly**

The First Amendment to the United States Constitution provides individuals with the right to free speech as well as to peaceable assembly.[2]  In addition to protecting literal speech, the First Amendment protects some expressive conduct.  Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 158 (3d Cir. 2002).  Expressive conduct will constitute protected speech if the conduct is "imbued with elements of communication," given the factual context of the conduct.  Id. at 160.  In cases where the expressiveness of the conduct is in doubt, the burden is on the putative speaker to demonstrate that the conduct was expressive. Id. at 161.  Importantly to this case, however, neither physical buildings themselves nor the act of constructing them are generally considered to be expressive conduct unless there is evidence that some "'attitude or belief' is conveyed or received from them."  Id. at 163 (citation omitted).  The reason for this, as the Third Circuit has concluded, is that "[o]therwise, the act of constructing houses of worship would implicate the Free Speech

_____

[2]Although Plaintiff's Complaint states that its right to assemble was violated, Plaintiff makes no argument in this area and has not cited any cases relating to its right to assemble.  Instead, Plaintiff's claims appear to be raised as Free Speech claims, in that Defendant denied Plaintiff the opportunity to congregate on the property for expressive, religious conduct. We will, therefore, treat Plaintiff's claim as one for a violation of its free speech rights.

Clause, whereas courts consistently analyze the constitutionality of zoning regulations limiting such construction under the Free Exercise Clause, not the Free Speech Clause."  <u>Id.</u>

If the conduct is found to be expressive speech, it can still be regulated so long as the conduct itself could be regulated and the regulation is narrowly drawn to further a substantial government interest unrelated to the suppression of speech.  <u>Clark v. Cmty. for Creative Non-Violence</u>, 468 U.S. 288, 294 (1984).  This heightened level of scrutiny does not apply, however, if the limitation is a "time, place, and manner regulation" that is narrowly tailored to achieve a legitimate, content-neutral governmental interest and leaves open alternative means of communication.  <u>Brown v. City of Pittsburgh</u>, 586 F.3d 263, 271 (3d Cir. 2009).  If the time, place, and manner regulation is a "generally applicable statute," then it need not be the least restrictive means of serving the government interest in order to meet the "narrowly tailored" requirement.  <u>Id.</u>; <u>see also</u> <u>Hill v. Colorado</u>, 530 U.S. 703, 726 (2000); <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 798 (1989).  Further, in determining whether a regulation of speech is content neutral, the principle focus is on whether the regulation was imposed because of a disagreement with the message contained in the speech or conduct.  <u>Id.</u> at 791.

Finally, regulations that may appear to be time, place, and

manner regulations will face heightened scrutiny if they are found to be prior restraints. Indeed, if the regulation is considered a prior restraint, there is a strong presumption that it is invalid. Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 558 (1975). Although content-neutral time, place, and manner restrictions are not generally considered prior restraints, they will be treated as such if they grant overly broad discretion to individuals in determining whether to permit the speech and do not "contain adequate standards to guide the official's decision and render it subject to effective judicial review." Thomas v. Chicago Park Dist., 534 U.S. 316, 322-23 (2002). If the regulation is found to be a prior restraint, it is only acceptable if the putative censor is required to institute judicial proceedings to prove that the speech is unprotected, no restraint is instituted before judicial review unless it is to maintain the status quo, and there are insurances for a prompt, final judicial determination. Conrad, 420 U.S. at 560.

Plaintiff's Speech

Turning to the conduct at issue in this case, it is first necessary to identify the speech that is allegedly being restricted. Plaintiff's claims focus on its ability to build a temple on the property and use the land for weekly worship as well as for special religious festivals. Perhaps equally important to what Plaintiff has alleged is what Plaintiff has not

alleged in this case: that there was any regulation of its
literal speech. In other words, Plaintiff's free speech claims
all rest on its expressive speech in being permitted to build a
temple and use the property for expressive religious conduct.

First, as noted above, in the absence of evidence supporting
a contrary conclusion, the building of a place of worship will
not be considered expressive conduct protected by the Free Speech
Clause. Plaintiff has not introduced any evidence to attempt to
show that the building itself will convey some attitude or
belief, and, therefore, we cannot find any violation of the First
Amendment's Free Speech Clause in relation to any denial of
permission to build a temple on the property.[3] This also
includes any claim that Defendant's Zoning Board's approval
process for Plaintiff's construction project was a prior
restraint. It is not a constitutional violation for a township
to enact a prior restraint on building, but only to place prior
restraints on speech. As the building of the temple was not
speech, there can be no claim for a prior restraint based on the
requirement that Plaintiff seek approval before building.

Plaintiff, however, also alleges that its desired uses of

---

[3]Plaintiff attempts to make an argument based upon cases such as Renton
v. Playtime Theaters, Inc., 475 U.S. 41 (1986), which have held that zoning
regulations that restrict where a certain type of business can locate might
raise First Amendment concerns. At issue in these cases, however, was not the
physical construction of buildings, but a regulation of where this speech
could occur. To the extent that Plaintiff is claiming the inability to use
land for religious speech apart from the building of the temple, we will
address that in our discussion below. We simply note at this point, however,
that the construction of the temple does not constitute protected speech.

the property as a location for religious worship and as a site for an annual religious festival constitute expressive conduct that should receive First Amendment protection.  In determining whether these uses constitute expressive speech we must consider whether they are "imbued with elements of communication."  Here, we believe that Plaintiff's desired conduct of worshiping on the premises and holding religious festivals on the property does constitute expressive speech.  The act of worshiping is an important part of an individual's life, and one that inherently communicates something to others about that individual's views on society, life, and other more philosophical subjects.  Even if conducted in a secluded area, the use of the land as a place of worship allows an individual's conduct to communicate these thoughts with other members of the congregation.  Further, the holding of festivals allows for the communication to extend to even more members and increases the likelihood that this conduct will be noticed by, and thereby communicated to, the surrounding community.  We will, therefore, address Defendant's regulation of this expressive speech.

Defendant's Zoning Ordinance

In analyzing this claim, we first must determine whether the Zoning Ordinance is a law of general applicability that merely places content-neutral time, place, and manner restrictions on certain forms of speech, or whether it is a more direct attempt

to regulate speech itself.

**Law of General Applicability**

Plaintiff asserts that the conditional-use portion of Defendant's Ordinance is not generally applicable because it establishes a series of individualized exceptions. This, however, is not an accurate description of the operation of Defendant's Ordinance. As Defendant notes, a conditional use is one that has already been approved by the legislature, and once the applicant has established that his proposed use falls within the conditional-use provision, the burden is on the government to support any reason for denying the use. This provision, therefore, does not require an individualized exception before the speech can occur, nor does it permit individualized exceptions from its application. Rather, this portion of the Ordinance applies generally to all applicants, and requires an individualized exception only when the use is being denied. In other words, the Ordinance applies generally to all of Defendant's residents and in favor of allowing speech, but permits the government to, in certain conditions, limit it. Under these circumstances, the law is one of general applicability, and any time, place, and manner regulation that is imposed need not be the least restrictive means in order to meet the narrow-tailoring requirement.

**Content-Neutral Time, Place, and Manner Regulation**

Plaintiff asserts that Defendant's Zoning Ordinance fails to be a content-neutral time, place, and manner regulation in three ways. First, Plaintiff appears to allege that the 2005 Zoning Ordinance was adopted for the purpose of curtailing Plaintiff's speech, and, therefore, is not content neutral. Second, Plaintiff argues that the Ordinance does not leave open adequate alternative methods of communication as it effectively zones out any religious use within the Township. Finally, Plaintiff argues that the Ordinance is an overly broad grant of discretion to Defendant's agents, thereby making it a prior restraint and not a permissible licensing scheme.

In regard to the first of these arguments, Plaintiff states "[a]s noted herein, there are sufficient facts to support an argument that Defendant's Ordinance was enacted in 2005 in order to prevent ACMEC from expanding." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. and Cross-Mot. Summ. J. 56 [hereinafter Pl.'s Mem.].) Plaintiff does not, however, expand upon what these facts might be. We see no evidence that the 2005 Ordinance is particularly aimed at preventing religious expression in general, or expansion by Plaintiff in particular. The only evidence that might be used to support such an inference is found in the transcript from Plaintiff's 2002 conditional-use hearing, at which Plaintiff's representatives were questioned as to what their future plans for

the property involved.  The transcript may be enough to prove that the Board was concerned about the possibility of a large-scale expansion of use on the property; this, however, is a far different proposition than the Ordinance being amended to prevent such a proposal, or to prevent speech based on its content.  By itself, the fact that Plaintiff received tough questioning at a hearing three years before the amended Ordinance was passed simply is not sufficient for a reasonable jury to find that the 2005 Zoning Ordinance was passed for the purpose of curtailing Plaintiff's future speech.

Turning to the second issue regarding whether this was an acceptable content-neutral time, place, and manner regulation, we must consider whether Defendant's Zoning Ordinance places too great a restriction on Plaintiff's ability to use property for religious speech, thereby denying reasonable alternative means of communication.  Plaintiff asserts that Defendant's Zoning Ordinance does not allow religious use as of right in any of its districts, and that due to the broad discretion left to the Zoning Board in determining whether to allow the religious use, there are not adequate alternative means of communication available.  Although it is correct that the ability to use property for a "[c]hurch or similar place of worship" is a conditional use under Defendant's Zoning Ordinance in four out of five of the zones within West Pikeland Township, (Ex. 31 Pl.'s

Mem. §§ 402(C)(4), 502(C)(4), 602(A)(2)(e), & 602(C)), and is not one of the uses permitted as of right in any zone, this does not mean that alternative methods of communication are not still available. Plaintiff's argument appears to place too much emphasis on the "conditional" portion of conditional use. In operation, a conditional use is a use that the legislature has expressly permitted; the burden is initially on the applicant to demonstrate that the proposed use falls within the conditional use, but once this has been done the burden shifts to the zoning board to establish that the proposed use will detrimentally affect the public welfare in a way not normally expected by such a use. Aldridge v. Jackson Twp., 983 A.2d 247, 253 (Pa. Commw. Ct. 2009); City of Hope v. Sadsbury Twp. Zoning Hearing Bd., 890 A.2d 1137, 1143 (Pa. Commw. Ct. 2006). The fact that using land for religious purposes is a conditional use, therefore, does not preclude the Ordinance from allowing adequate alternative means of communication. Religious use is not entirely zoned out of the Township of West Pikeland, nor do there appear to be harsh restrictions on where such uses are permitted. The Ordinance does not close out religious expressive speech, but instead seeks to insure that it occurs in a time, place, and manner that is consistent with the government's land-use goals.

Finally, Plaintiff asserts that the conditional-use provision of Defendant's Zoning Ordinance is overly vague and

grants too much discretion to the Zoning Board, thereby constituting a prior restraint on religious speech. As noted above, the conditional use must be granted not only before construction, but also before certain uses are made of the property, some of which include expressive conduct. Section 1612(D)(1) of the Zoning Ordinance sets forth the considerations for the Zoning Board in determining whether to grant a conditional-use application. Although some of these factors seem to address whether the proposed use meets the criteria of a conditional use or Defendant's general zoning requirements (such as subsections a, b, c, d, k, l, and m) and others are related to a consideration of whether the conditional use will have an impact on the surrounding area not normally expected from such a use (such as subsections f, g, i, and j), other considerations do not appear to be related to what the Zoning Board should be considering when deciding whether to allow a conditional use (such as subsections e and h). Further, the structuring of the section as well as many of the individual provisions are overly vague. The list includes fifteen factors and no indication of whether these all need to be met individually, or how they are supposed to be weighed. Turning to the individual provisions, it is entirely unclear what constitutes a "harmonious grouping," as required by subsection e, for example, or is "in keeping with the existing character of the neighborhood," as is demanded by

subsection h.  In addition, whether a use is "in the public interest," under subsection f, seems entirely up to the discretion of the person making the decision.  Importantly, Defendant has offered no limiting construction of any of these provisions.  Rather, this appears to be precisely the type of situation described by the Court in <u>Thomas v. Chicago Park District</u>, 534 U.S. 316 (2002), where, by virtue of the breadth of the delegation, whether or not the speech was allowed was left to the complete discretion of the Zoning Board officers.  To the extent, therefore, that Defendant's Zoning Ordinance required approval of a conditional use before property could be used for expressive religious speech, it was not simply a time, place, and manner regulation, but implemented a prior restraint on speech, and will only be permissible if it meets the requirements set forth above.

As noted above, prior restraints are viewed with extreme disfavor and, unless they are established with a series of safeguards to prevent any undue infringement on First Amendment rights, are impermissible.  Because there is no provision in Defendant's Zoning Ordinance that requires the Zoning Board to bring suit before it enforces the prior restraint, the necessary safeguards required to avoid strict scrutiny are not in place, and Defendant's Zoning Ordinance cannot be upheld.  As Defendant has not even attempted to argue to the contrary, summary judgment

is appropriate in Plaintiff's favor on this issue.  We find,
therefore, that in granting an overly broad amount of discretion
to its Zoning Board in deciding whether to allow expressive
religious use of land within the Township, Defendant has created
a prior restraint on speech in violation of Plaintiff's First
Amendment rights.

**Free Exercise of Religion**

The First Amendment also prevents Congress, and by
incorporation through the Fourteenth Amendment any state
legislature, from passing a law that prohibits the free exercise
of religion.  The Free Exercise Clause is implicated by "'beliefs
which are both sincerely held and religious in nature' without
regard to whether [the belief] is mandatory."  Tenafly, 309 F.3d
at 171.  Laws that are challenged under the Free Exercise Clause
face one of two standards of scrutiny:

> If the purpose or effect of a law is to impede the
> observance of one or all religions or is to
> discriminate invidiously between religions, that law is
> constitutionally invalid even though the burden may be
> characterized as being only indirect.  But if the State
> regulates conduct by enacting a general law within its
> power, the purpose and effect of which is to advance
> the State's secular goals, the statute is valid despite
> its indirect burden on religious observance unless the
> State may accomplish its purpose by means which do not
> impose such a burden.

Braunfield v. Brown, 366 U.S. 599, 607 (1961).  Importantly,
there is no "substantial burden" requirement under the
discrimination path; any government discrimination against

religion will implicate the Free Exercise Clause's protection. Tenafly, 309 F.3d at 170.

If the law does not discriminate between religions, the court must still determine whether it is generally applicable and content neutral before determining whether it is permissible. Although the Free Exercise Clause clearly prevents any law that tries to regulate beliefs, it does not, as a general matter, prohibit a neutral and generally applicable law that incidentally burdens religious conduct. Blackhawk v. Pennsylvania, 381 F.3d 202, 209 (3d Cir. 2004). In order to be neutral, a law must be both facially neutral and applied neutrally in practice. Id. Further, a facially neutral law that leaves discretion in application or that exempts some secularly motivated conduct and not religiously motivated conduct will not be considered generally applicable if the exemption is motivated by a desire to prevent the exercise of religion. Tenafly, 309 F.3d at 165. In addition, when challenging a zoning regulation, the burden is on the religious plaintiff to demonstrate that the inability to locate in a specific area impinges its free exercise of religion. Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 274 (3d Cir. 2007). If, on the other hand, the law is not neutral or generally applicable, strict scrutiny applies. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993).

In analyzing the Free Exercise claim, we must begin by addressing whether the Zoning Ordinance at issue here was a discriminatory law, either on its face or as applied. The Zoning Ordinance, read in its entirety, and including the provisions on conditional uses, does not treat religious uses differently from secular uses. Conditional-use approval is required for many secular as well as religious uses; multi-family dwellings, educational uses, nursing homes, retirement communities, mobile-home parks, and transitional or group housing all demand conditional-use permits. Facially, we see no evidence that Defendant's Ordinance treats religious and secular uses differently. Rather, the Ordinance seems to treat large and small scale uses differently, and this is not sufficient to draw Defendant's Ordinance into discriminatory territory.

It is possible, however, that this Ordinance was applied to target religiously motivated conduct. As Plaintiff has noted, the process through which it was required to proceed in seeking its conditional-use permit was quite lengthy and expensive. Plaintiff also points to conditional-use permits being granted to other, non-Hindu groups that did not require such an extensive process. Although Defendant notes that the length of proceedings are dictated in part by factors outside of its control—such as the number of people who attend the public hearings and ask questions and whether it is a request for a new building or to

use an existing building in a new way—we do believe that sufficient evidence has been submitted to allow a reasonable jury to find that the Ordinance was discriminatorily enforced against Plaintiff.  Plaintiff's conditional-use hearing required not merely one or two more hearings than other groups, but consisted of a total of eight hearings.  Further, Plaintiff asserts that there was an undue focus on "small technical issues," and that Defendant repeatedly added new reasons to the list of why the application could not be approved after engineering changes had been made.  These obstacles, according to Plaintiff, were not faced by other applicants.  At the same time, however, a reasonable jury could also find that there was no targeting of religiously motivated conduct in the application of this Ordinance to Plaintiff.  Defendant introduces evidence that demonstrates that at least some of the length of this process was dictated by Plaintiff, and that different requests simply require different amounts of time.  Further, Defendant asserts that it was not being overly technical, but merely assuring that Plaintiff's application met all requirements of its local codes.  Given this state of the record, we find that a genuine issue of material fact exists as to whether Defendant's Zoning Ordinance was applied discriminatorily to prevent Plaintiff's religious exercise.

Summary judgment on this claim, therefore, is inappropriate.

A jury must determine this factual issue before this Court can determine what standard of review applies to Plaintiff's Free Exercise claim. If the jury determines that the Ordinance was discriminatorily applied, judgment will be entered in Plaintiff's favor. If, on the other hand, a jury determines that it was not discriminatorily applied, judgment will be entered in favor of Defendant. This is because, as discussed above, Defendant's Ordinance is neutral and generally applicable, and Plaintiff has introduced no evidence from which we can conclude that there was more than an incidental burden on Plaintiff's exercise of religion. This is true even though Plaintiff has emphasized that this property is uniquely suited to its needs now that it has been blessed, and an inability to locate there would impinge its ability to freely exercise its religion. Plaintiff, however, has not stated, much less proven, that it cannot go through the process of finding and blessing another site. Further, Plaintiff chose to have the property blessed before it had received approval from Defendant for its conditional use. Plaintiff, therefore, voluntarily took actions that caused any impingement. We cannot find that the Free Exercise Clause protects a plaintiff that wilfully ties itself to a plot of land, knowing that zoning approval is required for its desired use, and then demands that the zoning board not apply an ordinance to it because denying the desired use would impinge its exercise of religion. That a

religious landowner be subject to a generally applicable and nondiscriminatory ordinance can only be described as an incidental burden, and, therefore, cannot give rise to a Free Exercise violation. For this reason, this claim turns on whether Defendant discriminatorily applied its Ordinance to Plaintiff. A jury, therefore, must determine the factual issue of discriminatory application, but, should it decide that the Ordinance was not discriminatorily applied, need not move on to the question of whether the Ordinance is otherwise valid.

**Due Process**

In Count III, Plaintiff brings a claim for a violation of his Substantive Due Process rights pursuant to the Fourteenth Amendment's Due Process Clause. In order for executive action to give rise to a Substantive Due Process claim, the plaintiff must establish that the action "shocks the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003). Action only shocks the conscience if it involves "'the most egregious official conduct.'" Id. at 400 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). The Third Circuit has explicitly noted that the shocks-the-conscience standard should be applied to zoning-board conduct when it is alleged to have violated the Substantive Due Process Clause, Eichenlaub v. Twp. of Ind., 385 F.3d 274, 285 (3d Cir. 2004), and stressed that this standard prevents the district

courts from becoming boards of zoning appeals.  United Artists,
316 F.3d at 402.

The inquiry into whether conduct shocks the conscience is
fact specific and flexible, depending largely on the amount of
time that the executive official had to determine how to act;
although deliberate indifference to constitutional rights may be
sufficient in circumstances where the actor had full opportunity
to examine the situation and make a decision, an intent to
deprive the individual of constitutional rights may be required
in circumstances where the actor was forced to make a split-
second decision.  Phillips v. County of Allegheny, 515 F.3d 224,
241 (3d Cir. 2008); see also Patrick v. Great Valley Sch. Dist.,
296 F. App'x 258, 261 (3d Cir. 2008).  Specifically in the land-
use-regulation context, the Third Circuit has noted that a case
in which executive officials attempted to hamper development due
to bias against a certain ethnic group would constitute
conscience-shocking behavior.  Eichenlaub, 385 F.3d at 286.

In the present case there is simply no ground for a
reasonable jury to conclude that Plaintiff's Substantive Due
Process rights were violated.  First, Plaintiff's claim that
Defendant was deliberately indifferent to Plaintiff's
constitutional rights in denying its conditional-use application
is untenable.  Defendant's Zoning Board held eight hearings and
issued a thirty-nine page decision in response to Plaintiff's

application, which considered and addressed Plaintiff's constitutional claims. To describe Defendant as being "deliberately indifferent" to Plaintiff's constitutional rights simply because Defendant disagreed with Plaintiff about what those rights are stretches the bounds of the Substantive Due Process Clause further than this Court is willing to go. As should be clear from the extensive briefing in this case and the lengthy nature of the present Memorandum analyzing these constitutional claims, Plaintiff's constitutional rights are quite complicated and intricate. In such a circumstance, we cannot describe Defendant's Zoning Board as indifferent to Plaintiff's constitutional rights simply because it reached a different conclusion than Plaintiff would have liked. Further, there is no evidence that supports a conclusion that Defendant believed Plaintiff to be constitutionally entitled to its conditional-use permit but chose to deny the permit regardless of such a belief. Instead, all that the record supports is a finding that Defendant disagreed with Plaintiff on Plaintiff's constitutional rights. Given this fact, we cannot find that Defendant was deliberately indifferent to Plaintiff's constitutional rights in a manner that shocks the conscience.

Plaintiff, however, also claims that Defendant acted in a way that shows that the conditional-use permit was denied due to a bias against Hindus. Although, if proven, this would

constitute conscience-shocking behavior, there is no evidence on the record that can support this claim. The evidence that Plaintiff presents consists of comments, letters, and websites that were made, written, and created by township residents. This, however, cannot be used to infer the mindset of the Zoning Board itself. Further, many of these statements appear to be more concerned with the size of the proposed temple and the number of people that it would bring into the area, and not with the race, religion, or ethnicity of anyone associated with Plaintiff's organization. Regardless of any bias that may appear on the record on the part of Defendant's residents, Defendant's Zoning Board issued a thorough opinion that set forth numerous grounds for denying the conditional use unrelated to Plaintiff's religion or ethnicity, even if some of Defendant's residents may have urged Defendant's Zoning Board to deny the application for these impermissible reasons. Without resorting to rampant speculation, no reasonable jury could conclude that Defendant "rigged" the conditional-use-application process against Plaintiff or that Plaintiff's application was denied because of its members' ethnicity or religion. In the absence of any conscience-shocking behavior, summary judgment must be entered in Defendant's favor on this claim.[4]

_____

[4] Plaintiff's Complaint also raises the claim that Defendant's Zoning Ordinance is unconstitutionally vague, and, therefore, violates its Fourteenth Amendment Due Process rights. Although this argument is not emphasized in any of its briefing on the motions for summary judgment, we think it worthwhile to

**Equal Protection**

Count III of Plaintiff's Complaint also charges Defendant with violating Plaintiff's Equal Protection rights, and brings these claims as a "class of one."[5]  A claim can be maintained under the Equal Protection Clause as a class of one if the individual is intentionally treated differently from others similarly situated without a rational basis.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  An individual does not literally need to be a class of one in order to proceed under this theory; the focus, instead, is on whether the plaintiff chooses to allege membership in a class or group.  Id. at 564 & n.*.  Rational basis review requires that legislative action, "[a]t a minimum, . . . be rationally related to a legitimate governmental purpose."  Clark v. Jeter, 486 U.S.

---

briefly address this claim here.  The crux of a void-for-vagueness challenge under the Due Process Clause is a lack of notice.  In criminal cases, the focus is on whether an individual has been put on notice that his conduct is prohibited by law.  In the zoning context, however, this argument does not have as much force.  Plaintiff knew, at least constructively, that the property was subject to a zoning ordinance, and that this ordinance required a conditional-use permit for religious use.  To the extent that Plaintiff alleges that this ordinance was so vague as to have a chilling effect on free speech or that it was so vague as to allow it to be used to hinder Plaintiff's free exercise of religion, we have addressed these claims in our discussion above.  This analysis, however, is a different one from a due process vagueness argument, and we do not believe that Plaintiff has submitted any evidence to support a finding that the Zoning Ordinance was so vague that Plaintiff was not on notice that it would be applied to its desired religious land use.

[5]Plaintiff's Complaint is not entirely clear on whether its Equal Protection claim is based upon its membership in a class, or whether it is brought as a "class of one."  Plaintiff, however, does not argue for any heightened scrutiny, and in its response to Defendant's Motion for Summary Judgment argues that it was treated "in an irrational and wholly arbitrary manner."  As these are the standards applied to class-of-one claims, we will assume that this is what Plaintiff intended to bring, and analyze it as such.

456, 461 (1988). There is a "strong presumption of validity" when examining a statute under rational basis review, and the burden is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314-15 (1993). Finally, when undertaking rational basis review, the party defending the constitutionality of the action need not introduce evidence or prove the actual motivation behind passage, but need only demonstrate that there is some legitimate justification that could have motivated the action. Id. at 315.

Plaintiff alleges that it was intentionally treated differently than the Montgomery School, a non-Hindu organization, in that it was denied its conditional-use permit and its application process was more extensive than the Montgomery School's. Plaintiff, however, has not established that this organization was similarly situated, nor has it provided evidence from which we could conclude that there was no rational basis for any difference in treatment. First, Plaintiff introduces no evidence from which this Court could conclude that the Montgomery School was attempting to build a new structure on land subject to a restrictive covenant. As the restrictive covenant on Plaintiff's property was important to Defendant's consideration of Plaintiff's conditional-use application, this distinction is salient. Further, even if the Montgomery School was similarly

situated, we simply cannot find that Defendant could have no
rational basis for treating the Montgomery School differently.
As Defendant notes, the proposed construction on Plaintiff's
property would have had a greater impact on the water supply
given the large degree of difference between the current and
proposed use of the property as well as the property's proximity
to a high-quality water stream. Finally, Defendant certainly
could have a rational basis for the differing application lengths
as Defendant has a legitimate government interest in allowing its
citizens an opportunity to be heard at a public Zoning Board
hearing, and in taking longer to review more large-scale
alterations to property.[6] As Defendant notes, the Montgomery
School's application was an enlargement upon the current
structure, but would maintain the same type of use already
conducted on the property; Plaintiff's proposal, on the other
hand, required alterations in the septic system, driveway, and
parking lot, as well as a complete change in the size and nature
of the structures located on the property. Under these
circumstances, we cannot find that Defendant could have no

---

[6]We take this brief aside to emphasize the difference between this
consideration and our discussion in relation to Plaintiff's Free Exercise
claim, above. Plaintiff's Free Exercise claim turned on Defendant's actual
motivation in applying its Ordinance, and whether this was done with
discriminatory intent. Under an Equal Protection class-of-one claim, however,
this consideration is irrelevant, and the focus is on whether Defendant could
have had a rational basis for its treatment of Plaintiff's application, and
not on whether this potential rational basis actually was the motivating
factor. Because of this, the factual issue of motivation must be resolved for
the Free Exercise claim, but not for the Equal Protection claim.

rational basis for any dissimilar treatment that occurred, and Plaintiff's Equal Protection claim must fail.

**RLUIPA**

RLUIPA marks, for the time being, the conclusion of a decade-long conversation between the Supreme Court and Congress. The debate started with <u>Employment Division v. Smith</u>, 494 U.S. 872 (1990), in which the Supreme Court held that generally applicable laws did not violate the Free Exercise Clause even if they incidentally burdened religion. Congress responded by passing the Religious Freedom Restoration Act ("RFRA") in 1993, which required strict scrutiny for any "substantial burden" on an individual's religious exercise. This statute, however, was ruled unconstitutional by the Supreme Court in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), for exceeding the legislature's remedial powers under the Fourteenth Amendment. Returning to the issue in 2000, Congress passed RLUIPA, which reinstated many of the provisions from RFRA, but applied them only to land-use and prison regulations. Plaintiff has alleged that Defendant violated both 42 U.S.C. § 2000cc(a), by imposing a substantial burden on Plaintiff's religious exercise in denying it permission to build a temple on the property, and 42 U.S.C. § 2000cc(b), by imposing unequal terms on religious groups, discriminating against religious institutions, and unreasonably limiting or totally excluding religious uses from locating within the

Township.  We will address each of these in turn, below.

<u>§ 2000cc(a)</u>

Plaintiff alleges that Defendant has placed a substantial burden on Plaintiff's exercise of religion by enforcing its Zoning Ordinance to prevent Plaintiff from building its desired temple.  Before we consider the merits of this issue, however, it is necessary to determine whether Plaintiff has standing to bring this claim.  In order to have standing, a plaintiff must demonstrate that it has suffered an injury, that the defendant's conduct has caused this injury, and that a judgment from the court could redress this injury.  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 103 (1998).

In the present case, Plaintiff has alleged that its federal rights were violated when Defendant refused to allow it to build the temple required for the exercise of its religion.  This is certainly a real and immediate injury that is sufficient to satisfy this prong of the standing analysis.  It is not clear, however, whether Defendant's action in denying the conditional-use application caused this injury or whether a favorable outcome on this claim would redress Plaintiff's injury.  These two factors are closely tied together, and in this case are unclear due to the restrictive covenant contained on Plaintiff's property.  If this restrictive covenant is valid, applicable, and enforceable, Plaintiff will not be able to build on its property

34

regardless of the limitations of Defendant's Zoning Ordinance or the conditional-use decision of Defendant's Zoning Board. In such circumstances, it would not be Defendant's Zoning Ordinance that caused the injury, and a finding that the Ordinance, either facially or as applied, violated RLUIPA would not redress Plaintiff's injury.

Under Pennsylvania law, a restrictive covenant must be "expressly and plainly stated." Jones v. Park Lane for Convalescents, 120 A.2d 535, 538 (Pa. 1956). Similarly to issues of contract interpretation, when interpreting a restrictive covenant, parol evidence is impermissible where the covenant is unambiguous. Del. River Port Auth. v. Thornburgh, 585 A.2d 1123, 1125-26 (Pa. Commw. Ct. 1989). A provision will only be considered ambiguous when the term is "reasonably susceptible to different constructions and capable of being understood in more than one sense." Id. As a general matter, however, land-use restrictions are not favored by Pennsylvania law, and a "plain disregard" is required for a violation to be found. Baumgardner v. Stuckey, 735 A.2d 1272, 1274 (Pa. Super. Ct. 1999). Further, a restrictive covenant is to be "strictly construed" against the party seeking its enforcement. Doylestown Twp. v. Teeling, 635 A.2d 657, 661 (Pa. Commw. Ct. 1993). In reviewing the decision of a local zoning board, however, a court should only reverse if the decision was lacking in "plausible rational basis." Sameric

Corp. of Del. v. City of Phila., 142 F.3d 582, 596 (3d Cir. 1998).

In the present case, we are not called upon to enforce the restrictive covenant, but, rather, to determine whether the decision of Defendant's Zoning Board (that the restrictive covenant on this property applied to prevent the building of the temple) was sufficient, apart from Defendant's Ordinance, to prevent Plaintiff from building.  Plaintiff's property, here, was subject to a restrictive covenant that states "NO DEVELOPMENT SHALL BE PERMITTED BEYOND THIS CROSS-HATCHED BOUNDARY." (Ex. E Def.'s Mot. Summ. J.)  In examining Plaintiff's proposal, Defendant's Zoning Board concluded that "[t]he conditional use plan contains development outside of the cross-hatched boundary . . . . The Township is enforcing the plan restriction limiting development within the cross-hatched boundary."  (Ex. M Def.'s Mot. Summ. J.  28.)

Plaintiff, however, contests this characterization and maintains that there was no development, within the definition of Defendant's Zoning Ordinance, proposed outside of the cross-hatched area.  This is because Defendant's ordinance that was in effect at the time that the restrictive covenant was recorded on the subdivision plan defined "land development" as "[a] group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential

building on a lot or lots regardless of the number of occupants or tenure." (Ex. 56 Pl.'s Mem. ¶ 20(i).) We see no evidence, however, that this definition is applicable to the present dispute given that this is a restrictive covenant between private parties that in no way incorporates Defendant's Zoning Ordinance's definitions and, further, uses the term "development" as opposed to "land development." In addition, we think that the term "development" covers the construction of a nonresidential building that is over 25,000 square feet in size, and involves the construction of an underground septic system. Plaintiff has asserted that the final plan submitted to Defendant's Zoning Board did not involve the placement of any portion of the temple or auxiliary building outside of the cross-hatched boundary on the zoning map. Although the evidence that Plaintiff has introduced in support of this assertion is not conclusive on this point, as no cross-hatching is visible on Plaintiff's version of the map contained in Exhibit 38, the location of the buildings themselves is not dispositive as the extensive construction required to install the septic system would occur outside of the cross-hatched boundary. This, by itself, would fall within the plain meaning of the word "development." Even if another argument about the definition could be reasonable, we do not review Defendant's Zoning Board's interpretation of a restrictive covenant de novo, and Plaintiff has not chosen to appeal the

Zoning Board's conclusion on this matter.  Defendant's determination cannot be described as lacking any plausible rational basis, and we cannot overturn it.

Plaintiff, therefore, is prohibited from constructing the desired temple due to the operation of the restrictive covenant, which was on the property when Plaintiff purchased the land, and of which Plaintiff had, at a bare minimum, constructive knowledge.  In these circumstances, it is not Defendant but the restrictive covenant that is responsible for any potential substantial burden.  Any favorable finding in relation to the substantial burden prong of Plaintiff's Complaint, therefore, would not redress Plaintiff's injury.  As we lack standing over this portion of Plaintiff's Complaint, we must deny any relief and dismiss this claim.[7]

---

[7]To the extent that Plaintiff is also arguing that the enforcement of the restrictive covenant against it constitutes a substantial burden on its religious exercise, this argument cannot survive a motion for summary judgment.

> [A] substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available . . . versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

Washington v. Klem, 497 F.3d 272, 280 (3d Cir. 2007).  First, Plaintiff is not facing the forfeiture of any generally available benefits.  The generally available benefit of being able to freely build on property was already forfeited here before Plaintiff purchased the property, and Plaintiff could not receive it back by abandoning the precepts of its religion.  Further, the government is not putting substantial pressure on Plaintiff to modify its beliefs in this case, but is simply enforcing a restrictive covenant regardless of Plaintiff's beliefs.  Under these circumstances, even if Plaintiff were arguing that the enforcement of a restrictive covenant constitutes a substantial burden, summary judgment would be appropriate in Defendant's favor.

<u>§ 2000cc(b)</u>

42 U.S.C. § 2000cc(b) prevents a government from discriminating against or excluding religious organizations through land-use regulations.  Unlike § 2000cc(a), when bringing a claim under § 2000cc(b) there is no requirement that the plaintiff demonstrate a substantial burden.  <u>Lighthouse Inst.</u>, 510 F.3d at 262.  Under this section, rather than having strict scrutiny, there is strict liability; if discrimination occurred, the government does not have the opportunity to justify the conduct by showing a compelling interest.  <u>Id.</u> at 269.  Plaintiff has alleged violations of each of § 2000cc(b)'s three subdivisions, and we will address each in turn, below.

**Equal Terms**

In order to state a claim under RLUIPA's equal-terms provision, a plaintiff must show that "(1) it is a religious entity or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance."  <u>Id.</u> at 270.

In the present case there does not appear to be any dispute over the first of these factors.  Instead, the dispute is centered on whether Defendant has treated a nonreligious entity that is similarly situated as to the purpose of the land-use

39

regulation more favorably than a religious entity. Plaintiff points to three instances in which similarly situated entities received more favorable treatment: the Montgomery School's application for a special exception to expand its size; the renting of a room to a Christian group for conducting services in Downing Hills; and the approval of a Christian organization's renting of a room from the Montgomery School. None of these, however, are secular entities. The Montgomery School is a Christian school, and the renting of rooms was done by Christian groups in both cases. RLUIPA's equal-terms provision does not require that all religious entities be treated similarly, but rather requires that religious entities be treated equally to nonreligious entities. As Plaintiff has not pointed to unequal treatment when compared to nonreligious entities, summary judgment is appropriate in Defendant's favor on this issue.

### Nondiscrimination Claim[8]

Under RLUIPA's nondiscrimination provision, governments are prevented from discriminating on the basis of "religion or religious denomination." Plaintiff appears to allege that

---

[8]We are unconvinced by Plaintiff's repeated assertions that Defendant did not move for summary judgment on Plaintiff's nondiscrimination, total exclusion, or unreasonable limitations claims brought under 42 U.S.C. § 2000cc(b)(2). As Defendant notes, its Motion for Summary Judgment was not organized along an exact outline of Plaintiff's Complaint, but portions of its argument in its Motion for Summary Judgment do address these claims. We think it clear that Defendant was requesting summary judgment on all of Plaintiff's claims, and will not preclude Defendant from arguing these claims simply because its brief in support of its Motion for Summary Judgment did not contain a heading explicitly asserting that these claims were being argued.

Defendant violated this provision in three ways:  first, by allowing a Christian group to use one of Defendant's offices for worship services and by allowing a Christian group to use the Montgomery School's gym for worship services without receiving a conditional-use permit; second, by granting the conditional-use permit for the Montgomery School's expansion; and third, by allowing Christian groups to have a short and easy path to conditional-use approval.  As to the first provision, we see no evidence presented by Plaintiff that could lead a jury to conclude that these organizations were exempted from the conditional-use requirement.  Although Exhibit 58 does note that the Montgomery School was being leased by "a chapel" (¶ 11), there is simply no evidence that this chapel did not receive a conditional-use permit, nor is there any indication that the use that the lease authorized was a conditional use and not a permitted use.  In other words, the document does not say that the lease was for use as a chapel, but simply that it was leased by a chapel.  The same is true of Exhibit 59 and the agreement to lease a room to the Downing Hills Christian Fellowship Church. Although the lease agreement is clearly between the Township and a Christian church, it, again, is not clear what use was being permitted.  The room leased was the "Black Box theatre."  It is quite possible, therefore, that this room was not being put to religious use.  Using a theater space for drama rehearsals or

play productions, as well as countless other uses, would not require a conditional-use permit. Plaintiff simply has not introduced any evidence that these groups, although religious, were intending to use the spaces for a religious purpose. In the absence of any such evidence, Plaintiff has not demonstrated that these groups were treated differently than it was, and we cannot allow this argument to reach a jury.

The allegations concerning the granting of a conditional-use permit for the Montgomery School's expansion also cannot survive summary judgment. After examining the Montgomery School's application, we cannot conclude that it qualifies as similarly situated for the purposes of Defendant's regulatory interests. First, Defendant asserts that it had significantly higher concerns about Plaintiff's construction's impact on water resources than it did about the Montgomery School's construction. Plaintiff's proposed construction was on land containing wetlands, steep slopes, and in proximity to a high-quality water stream, all of which led to unique concerns about that property. Further, the Montgomery School property already had an adequate on-lot septic system, whereas Plaintiff's application would have required this additional construction. Finally, Defendant notes that the Montgomery School's application was already in compliance with all of the municipal and state ordinances and regulations. As discussed above, this was not true for

Plaintiff's application.  With this background, it would be difficult to conclude that the Montgomery School was a similarly situated entity.  Even if the two entities were similarly situated, however, the Montgomery School's application affected the regulatory purpose in a much less severe way, and this justifies an approval in that case while Plaintiff's permit was denied.  Under these circumstances, it would not be reasonable for a jury to conclude that the Montgomery School's application was granted and Defendant's application denied due to the religion of the property owners.

Finally, Plaintiff's claims that the process that it faced in requesting conditional-use approval was more extensive than the Montgomery School's and that its application faced unduly heightened scrutiny must be decided at trial.  These issues have already been discussed above in relation to Plaintiff's Free Exercise claim, and we need not rehash the analysis here.  To the extent that Defendant applied its Zoning Ordinance discriminatorily to Plaintiff, it has violated Plaintiff's rights under RLUIPA.  As a genuine issue of material fact remains as to whether the Ordinance was discriminatorily applied, this claim must be decided at trial.  For the same reasons as summary judgment was inappropriate on Plaintiff's Free Exercise claim, therefore, it is also improper on Plaintiff's nondiscrimination claim under RLUIPA.

**Total Exclusion or Unreasonable Limitation**

Plaintiff's claim for a total exclusion under RLUIPA must be denied for the same reason that Plaintiff's First Amendment claims based upon <u>Renton</u> were denied. Plaintiff's religious use simply has not been totally excluded from Defendant's jurisdiction. Although conditional-use permits are required, for the reasons discussed above, Defendant's Zoning Ordinance does not operate as a total exclusion upon religious land use.

Turning to the unreasonable-limitation claim, Plaintiff asserts that the limitation on the size of a building on its property to 5,000 square feet and fitting within the cross-hatched boundary on the subdivision map is unreasonable. Plaintiff also argues that the degree of discretion granted to Defendant's Zoning Board in determining what uses are appropriate operates as an unreasonable limitation on its exercise of religion. First, we do not think that it can be an unreasonable limitation to require a property owner to comply with a restrictive covenant on the land. Further, we do not think that a particularized limitation placed on an individual plot of land can fall within the confines of § 2000cc(b)(3)(B). This subsection prohibits a land use regulation that "unreasonably limits religious assemblies, institutions, or structures <u>within a jurisdiction</u>." (emphasis added). From the plain language of the statute it is clear that the purpose of this subsection is not to

examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate.  Plaintiff simply has not demonstrated any such conduct by Defendant.

Finally, examining Plaintiff's second contention, we see no indication that RLUIPA's unreasonable-limitation prong makes overly broad grants of discretion per se unreasonable or otherwise in violation of the statute.  Although Plaintiff asserts that the Seventh Circuit has held in <u>Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin</u>, 396 F.3d 895 (7th Cir. 2005), that an overly broad delegation of discretion to a Zoning Board can violate RLUIPA's unreasonable-limitation provision, this assertion is not only not a holding, but it is not even truly dicta.  Instead, it represents a hypothetical counterargument proposed by the court to something that was not even at issue in the case.[9]  Further, the Seventh Circuit later noted that "[e]ven if the Zoning Regulations were

---

[9]  Plaintiff quotes from <u>Sts. Constantine</u> in its Response and Cross-Motion for Summary Judgment, stating "the Court held that where the 'state [has] delegate[d] essentially standard less [sic] discretion to nonprofessionals operating without procedural safeguards' a claim under this section may arise."  (Pl.'s Mem. 49.)  This quote is beyond misleading and toes the line of what legal ethics permits.  The full quote from the Seventh Circuit opinion is as follows:

> But that is not argued; and if it were argued a counterargument would be the vulnerability of religious institutions–especially those that are not affiliated with the mainstream Protestant sects or Roman Catholic Church–to subtle forms of discrimination when, as in the case of the grant or denial of zoning variances, a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards.

<u>Sts. Constantine</u>, 396 F.3d at 900.

to grant the Board undue discretion, this does not demonstrate the violation of RLUIPA § 2[000cc](b)(3)(B)."  <u>Vision Church v. Vill. of Long Grove</u>, 468 F.3d 975, 991 (7th Cir. 2006).  Given that even the one circuit that Plaintiff cites as supporting its argument has not in fact made such a holding, and given that we see nothing in the text of the statute itself that would lead us to conclude that it was intended to cover overly broad grants of discretion, we will decline to make such an extension in this case.  Further, as discussed above, we do not think that Defendant's Zoning Board's decision to deny the conditional use can be described as unreasonable given the restrictive covenant on the property and the regulatory goals of the conditional-use provision.  Summary judgment on this issue, therefore, must be granted in Defendant's favor.

## Conclusion

Both Plaintiff's and Defendant's Motions for Summary Judgment will be granted in part and denied in part.  On Count I of Plaintiff's Complaint, summary judgment is granted in Plaintiff's favor in that Defendant's Zoning Ordinance operated as a prior restraint on Plaintiff's ability to use its property for expressive, religious speech.  On all other portions of Count I, summary judgment is granted in Defendant's favor.  On Count II of Plaintiff's Complaint, both parties' Motions for Summary Judgment are denied as a genuine issue of material fact remains

over whether Defendant's Zoning Ordinance constituted a neutral law of general applicability. As this factual determination is a precursor for determining the standard of review to be applied to Defendant's conduct, we cannot grant summary judgment at this time. Summary judgment is granted in Defendant's favor on all of Plaintiff's Equal Protection and Due Process claims raised in Count III of the Complaint. Turning to Plaintiff's statutory claims, we must dismiss Count IV of Plaintiff's Complaint as Plaintiff lacks standing to bring this claim, and we, therefore, lack jurisdiction over it. Finally, summary judgment will be granted in Defendant's favor on all of Plaintiff's allegations contained in Count V of the Complaint, except as to Plaintiff's claim pursuant to 42 U.S.C. § 2000cc(b)(2) that it was discriminated against in the procedures that it faced in its conditional-use application. This claim, which substantially mirrors Plaintiff's Free Exercise claim, must proceed to trial.